## PARKER v. SHERMAN.

(District Court, D. Vermont.   November 27, 1912.)

BANKRUPTCY (§ 184*)—ACTION BY TRUSTEE—FRAUDULENT TRANSFER OF PROP-
ERTY.

A sale of a stock of merchandise by an insolvent immediately prior to
his bankruptcy *held* on the evidence fraudulent and void under Personal
Property Law New York (Consol. Laws 1909, c. 41) § 44, relating to. the
transfer of goods in bulk, requiring previous notice to creditors, etc., and
to render the purchaser liable for their value to the bankrupt's trustee;
the bankrupt having made a preferential payment with the proceeds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277;
Dec. Dig. § 184.*]

In Equity.   Suit by Nathaniel Parker, trustee in bankruptcy of
Hugh Owens, against D. C. Sherman.   Decree for complainant.
See, also, 195 Fed. 648.

S. E. Everts, of Granville, N. Y., for complainant.
T. W. Moloney, of Rutland, Vt., for defendant.

MARTIN, District Judge.   One Fred W. Allen is, and has been
for some years, postmaster in Granville, N. Y.   He gave the required
bonds to the government.   Hugh Owens, now in bankruptcy, was as-
sistant postmaster in the same post office, and a resident of said
Granville.   He was a merchant, and the post office was kept in his
store.   He gave no bonds as such assistant postmaster, and embezzled
funds belonging to the Post Office Department to the amount of
$2,800.   The said Owens, in the language of some of the witnesses,
had been in "straitened circumstances" for several years, and it
was quite generally known in Granville and vicinity that he was not
able to pay his debts.   He was arrested for said embezzlement late
in the fall of 1910, and was released on bail.   On the 9th day of De-
cember, 1910, said Owens gave said Allen a bill of sale of certain
furniture, etc., that was exempt from attachment, and also a chat-
tel mortgage on his store of goods, the purpose of which is herein-
after set forth.   About that time there were several conferences be-
tween Owens and some of his creditors, notably the officers of both
of the banks in Granville, as to raising more money.   Both Allen and
Owens consulted counsel before and after the giving of the bill of
sale and chattel mortgage above mentioned, and on the day follow-
ing the last consultation, and on the 13th of the same December,
Owens went to Poultney, Vt., and proposed to the defendant Sherman
to sell him his entire stock of goods.   Sherman was a merchant
dealing in gents' clothing principally.   Owens offered Sherman his
goods at 50 per cent. of their cost price.   Sherman then told him
that he would take the goods, if, upon conference with counsel, he
found everything to be free of liens.   The defendant went to Gran-
ville, and consulted J. B. McMormick, Esq., and then informed Owens,
at Granville, that he would take the goods on the terms which he had
given him, and would come to Granville to work on the inventory

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that night.   Sherman went back to Poultney, stayed in his store until
about 9 o'clock, then took his clerk, and went back to Granville, and
worked on the inventory until 1 or 2 o'clock in the morning, and then
went home to Poultney.   He returned the next night and continued
work on the inventory at Granville, and the following night, during
the night, the goods were removed from Granville, N. Y., to Poultney,
Vt., and delivered to the possession of the defendant, Sherman.   Im-
mediately an involuntary petition in bankruptcy was filed against
Owens in the Northern District of New York, and in due time, to
wit, February 23, 1911, the complainant in this case was appointed
trustee of said Hugh Owens' bankrupt estate in the Northern Dis-
trict of New York, and, after investigating the facts, he brought this
bill in chancery.

The plaintiff claims that the goods were sold in violation of the New
York statute relating to the sale of goods in bulk, a copy of which
is hereto attached.[1]

The defendant claims that the contract was made in Vermont and
the goods delivered to the defendant in Vermont, and therefore the
New York statute does not apply, and that, the goods coming from
the state of New York, section 5010 of the statutes of Vermont does
not apply.   A copy of the Vermont statute relating to fraudulent
sales of merchandise is hereto attached.[2]

[1] New York Statute.

Sec. 44. Transfer of Goods in Bulk.

(1) The transfer of any portion of a stock of goods, wares or merchandise
otherwise than in the ordinary course of trade, in the regular and usual pros-
ecution of the transferrer's business, or the transfer of an entire such stock
in bulk, shall be presumed to be fraudulent and void as against the creditors
of the transferrer, unless the proposed transferree shall, at least five days
before the transfer, in good faith, make full and explicit inquiry of the trans-
ferrer as to the names and addresses of each and all of the creditors of the
transferrer, and unless such transferree shall, at least five days before the
transfer, in good faith notify, or cause to be notified of the proposed trans-
fer, personally or by registered mail, each of the creditors of the transferrer
of whom such transferree has knowledge, or can with the exercise of reason-
able diligence acquire knowledge.

(2) The transferrer shall at least five days before such transfer fully and
truthfully answer in writing such transferree's inquiries as to the names and
addresses of the transferrer's creditors, and if such transferrer shall know-
ingly or willfully refuse so to answer or make or deliver, or cause to be made
or delivered to such transferree any false or incomplete answer to such in-
quiries, such transferrer shall be deemed guilty of a misdemeanor, and upon
conviction thereof shall be punished accordingly.

(3) Transfers under this section shall include sales, exchanges and assign-
ments, but nothing contained in this section shall apply to the transfers by
executors, administrators, receivers, assignees under a voluntary assignment
for the benefit of creditors, trustee in bankruptcy or by any public officer un-
der judicial process.

[2] Statute of Vermont.

Fraudulent Sales of Merchandise.

Sec. 5010. Regulations. The sale in bulk of any part or the whole of a stock
of merchandise, otherwise than in the ordinary course of trade and in the
regular and usual prosecution of the seller's business, shall be fraudulent
and void as against the creditors of the seller, unless the seller and purchaser,

I find that, while the price for the goods was agreed upon in Vermont, it was subject to what the defendant might ascertain as to liens thereon by an investigation and consultation with counsel at Granville, N. Y.; so as a matter of law I find that the contract was concluded in New York, and that the New York statute applies.

The plaintiff further claims that the defendant bought these goods under such circumstances that he must have known, or ought to have known, that Owens was insolvent, and that such a purchase would be, and was, in fact, a preference and a fraud upon the general creditors of the bankrupt. The defendant testified that he had no knowledge of the bankrupt's financial condition, except that he was embarrassed by his defalcation of the post office funds. The evidence on the part of the plaintiff shows that the bankrupt and the defendant were personal friends, frequently boarding at the same hotel and visiting each other. This evidence is not denied. The defendant knew that the said Owens had not sufficient funds at his command with which to make good to Allen, the postmaster, the funds that the said Owens, as assistant postmaster, had abstracted from the post office funds. The defendant must have known that Owens was bankrupt, and I find from these circumstances, notwithstanding his denial, that he did know it. All the circumstances indicate that he knew of the execution of the lien and chattel mortgage aforesaid by said Owens to said Allen to secure Allen from his liability to the government for Owens' embezzlement of the postal funds. He must have known that there was some reason for changing that arrangement of securing Allen to that of a sale of the stock of goods to raise the funds to cover the embezzlement. From all the circumstances I find that the defendant entered into this arrangement of purchasing the goods in bulk knowing that the said Owens was in a bankrupt condition, and that this transaction would result in a preference to Allen over the other creditors of said Owens.

I further find that the lien and mortgage given by Owens to said Allen was to secure Allen for his liability to the government for said post office funds embezzled by Owens; that in said transaction this liability was treated as an indebtedness by said Owens to said Allen. Neither the defendant nor Owens did anything in compliance with either the New York statute relating to the sale of goods in bulk, or the Vermont statute relating to fraudulent sales of goods. The contract of sale was a secret, and the goods were removed in the nighttime, that the matter might be kept a secret until possession was ob-

at least five days before the sale, make a full detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the seller of each article to be included in the sale, and unless the purchaser demands and receives from the seller a written list of the names and addresses of the creditors of the seller, with the amount of indebtedness due or owing to each and certified by the seller, under oath/ to be, to the best of his knowledge and belief, a full, accurate and complete list of his creditors and of his indebtedness, and unless the purchaser, at least five days before taking possession of such merchandise, or of paying therefor, notifies personally or by registered mail, every creditor whose name and address are stated in such list, of the proposed sale and of the price, terms and conditions thereof.

tained. The undisputed evidence is that the defendant paid all that the store of goods was worth, and I so find the fact.

I further find that the defendant paid for this stock of goods with his check given to said Owens, and that Owens took the .avails of said check, and secured a cashier's draft, which went to the government in part payment of said Owens' defalcation. This store of goods bought by the defendant comprised substantially the bankrupt's assets. His indebtedness exceeded $7,000, besides said defalcation. The exhibits in the case show that the said Owens was duly adjudged a bankrupt in the Northern District of New York. For the exact date I refer to the exhibits. The complainant was duly appointed trustee on February 23, 1911. Said bankruptcy cause is now pending in the United States District Court for the Northern District of New York, and the proceedings have been regular and in accordance with the provisions of the National Bankruptcy Acts. Said exhibits are referred to, and made a part of these findings of fact.

The defendant has disposed of the goods, and put them beyond the reach of the court, wherefore the complainant may have a decree for the value of the goods, with interest.